UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

CIVIL MINUTES—GENERAL

| | |
|---|---|
| **Case No.** CV 23-1267-MWF (RAOx) | **Date:** April 14, 2023 |
| **Title:** William Ollerton v. National Steel and Shipbuilding Company et al | |

**Present:** The Honorable MICHAEL W. FITZGERALD, U.S. District Judge

| Deputy Clerk: | Court Reporter: |
|---|---|
| Rita Sanchez | Not Reported |

| Attorneys Present for Plaintiff: | Attorneys Present for Defendant: |
|---|---|
| None Present | None Present |

**Proceedings (In Chambers):** ORDER DENYING PLAINTIFF'S MOTION FOR REMAND TO STATE COURT [45]

Before the Court is the Motion to Remand (the "Motion") filed by Plaintiff William Ollerton on March 9, 2023. (Docket No. 45). Defendant National Steel and Shipbuilding Company ("NASSCO" or "Defendant") filed an Opposition on March 20, 2023. (Docket No. 48). Plaintiff filed a Reply on March 27, 2023. (Docket No. 54).

The Court has read and considered the papers filed on the Motion and held a hearing on **April 10, 2023**.

The Motion is **DENIED**. The Court concludes that Defendant may raise the military contractor defense even though Plaintiff's claim arises from Defendant's alleged negligence in the performance of a services contract, as opposed to a procurement contract. In *Boyle* itself, the Supreme Court noted there is no basis for a distinction between the two types of contracts and Ninth Circuit precedent does not appear to foreclose application of the defense to this action. Moreover, Defendant has satisfied its evidentiary burden of demonstrating that removal is proper under the officer removal statute through the unrebutted declarations of several retired officers of the U.S. Navy as well as a former NASSCO employee.

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

CIVIL MINUTES—GENERAL

Case No.  CV 23-1267-MWF (RAOx)                              Date:  April 14, 2023
Title:     William Ollerton v. National Steel and Shipbuilding Company et al

I. **BACKGROUND**

Plaintiff filed a complaint on January 12, 2023, in Los Angeles Superior Court against NASSCO and 19 other non-removing Defendants.  (Notice of Removal ("NOR") (Docket No. 1), Ex. 1 (Complaint)).

The Complaint does not do much to specify the precise allegations against each Defendant.  However, the Court summarizes the allegations against Defendant NASSCO to the extent they can be discerned.

Plaintiff was allegedly exposed to asbestos during his time as a Machinist Mate in the U.S. Navy.  (Complaint ¶ 7).  Relevant to this Motion, Plaintiff alleges that he was negligently exposed to asbestos aboard the USS *Duluth* while it was undergoing repairs at Defendant's shipyard in California between 1976 and 1978.  (*Id.*).  Plaintiff alleges that during his service in the Navy aboard the USS *Duluth* he "used, handled, or was otherwise exposed to asbestos, asbestos-containing products and/or products designed to be used in association with asbestos products," and that "by design [] normal use and operation[, such products] directly created, generated, released and exposed [Plaintiff] to asbestos-containing dust, debris, fiber."  (*Id.*).  Plaintiff alleges that this exposure to asbestos dust increased his risk of developing mesothelioma and asbestos disease(s) from which he now suffers."  (*Id.*).

Plaintiff generally alleges that Defendants "fail[ed] to protect" Plaintiff from asbestos dust, and "failed to take reasonable care to warn [] [P]laintiff of the danger and harm to which he was exposed while installing, handling, and otherwise using products, as well as while he was in the vicinity of the use, installation, and handling of said products, and failed to specify, recommend, supply, install, sell, and use readily available substitutes which do not and did not pose the danger to human health."  (*Id.* ¶¶ 7, 25).

Based on these allegations, Plaintiff asserts the following three claims against Defendants: (1) negligence, (2) strict products liability and (3) premises

---

**CIVIL MINUTES—GENERAL**                                                                 2

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

CIVIL MINUTES—GENERAL

Case No. CV 23-1267-MWF (RAOx)            Date: April 14, 2023

Title:      William Ollerton v. National Steel and Shipbuilding Company et al

owner/contractor liability. However, every allegation pertaining to Defendant NASSCO is "specifically and strictly limited to liability for 'negligent exposure to asbestos dust.'" (Motion at 6) (citing Complaint ¶¶ 7, 11). In other words, NASSCO is expressly excluded from the claim for strict products liability. (Complaint ¶ 33) ("Plaintiff hereby waives any strict liability claim and any product liability against [NASSCO]").

      Defendant filed the NOR on February 21, 2023, asserting subject matter jurisdiction based on "federal officer grounds" under 28 U.S.C. § 1442(a)(1). (NOR ¶ 8). Defendant asserts that it is entitled to remove under the federal officer statute because "[a]t all relevant times, including during [Plaintiff's] alleged work aboard a military vessel, any and all ships constructed and/or repaired by NASSCO for the [U.S.] military were designed, manufactured and/or repaired in accordance with detailed specifications approved by the [U.S.] military and under the direction, supervision, control, orders, and directives of a federal officer acting under color of federal office" and it is therefore entitled to the government contractor defense. (*Id.* ¶¶ 8-9). About two weeks later, Plaintiff filed this Motion arguing that the Court must remand this action because it lacks jurisdiction under § 1442.

      Additionally, after this Motion was fully briefed, the parties filed a Joint Stipulation, in which Plaintiff "disclaims and waives any federal, state and maritime law claims against NASSCO arising from potential asbestos exposure during NASSCO's work on the USS *Duluth* (LPD-6), while the ship was drydocked and/or berthed at the 32nd Street Naval Station San Diego ("NAVSTA San Diego") between October 28, 1976 and January 14, 1977" and further disclaims reliance on any facts that would otherwise "trigger the 'federal enclave' defense." (Joint Stipulation re: Waiver (Docket No. 61) at 3; *see id.* at 4 (further noting that the Joint Stipulation renders Defendant's Supplement to Notice of Removal moot).

| | |
|---|---:|
| **CIVIL MINUTES—GENERAL** | 3 |

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

CIVIL MINUTES—GENERAL

Case No.  CV 23-1267-MWF (RAOx)            Date:  April 14, 2023
Title:     William Ollerton v. National Steel and Shipbuilding Company et al

## I.    LEGAL STANDARD

In general, "any civil action brought in a State court of which the district courts of the United States have original jurisdiction, may be removed by the defendant or the defendants, to the district court[.]" 28 U.S.C. § 1441(a). A removing defendant bears the burden of establishing that removal is proper. *See Abrego Abrego v. The Dow Chem. Co.*, 443 F.3d 676, 684 (9th Cir. 2006) (per curiam) (noting the "longstanding, near-canonical rule that the burden on removal rests with the removing defendant").

Under § 1442(a)(1), a civil action filed in state court may be removed to a federal district court if the action was filed against or directed to the "United States or any agency thereof or any officer (or any person acting under that officer) of the United States or of any agency thereof, in an official or individual capacity, for or relating to any act under color of such office." 28 U.S.C. § 1442(a)(1). To invoke the statute, [a defendant] must show the following three elements are met: (1) "it is a 'person' within the meaning of the statute, (2) a causal nexus exists between [the] plaintiff[']s[] claims and the actions [the defendant] took pursuant to a federal officer's direction, and (3) it has a 'colorable' federal defense to [the] plaintiff[']s[] claims. *Leite v. Crane Co.*, 749 F.3d 1117, 1120 (9th Cir. 2014) (citing *Durham v. Lockheed Martin Corp.*, 445 F.3d 1247, 1251 (9th Cir. 2006)).

"Like plaintiffs pleading subject-matter jurisdiction under Rule 8(a)(1), a defendant seeking to remove an action may not offer mere legal conclusions; it must allege the underlying facts supporting each of the requirements for removal jurisdiction." *Id.* at 1122. A plaintiff's motion to remand for want of jurisdiction is "the functional equivalent of a defendant's motion to dismiss for lack of subject-matter jurisdiction under Rule 12(b)(1)." *Id.* "As under Rule 12(b)(1), a plaintiff's motion to remand may raise either a facial attack or a factual attack." *Id.*

A "facial" attack accepts the truth of the defendant's allegations in the notice of removal but "asserts that they are insufficient on their face to invoke federal jurisdiction." *Id.* at 1121 (internal citation omitted). A "factual attack contests the

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

CIVIL MINUTES—GENERAL

Case No.  CV 23-1267-MWF (RAOx)                    Date:  April 14, 2023
Title:     William Ollerton v. National Steel and Shipbuilding Company et al

truth of the [defendant's] factual allegations," requiring the defendant to come forward with "competent proof" to support its allegations, "under the same evidentiary standard that governs in the summary judgment context." *Id.*

## II.    DISCUSSION

The parties do not dispute that Defendant qualifies as a "person" within the meaning of § 1442(a)(1).  (Motion at 10; Opposition at 8).  However, Plaintiff argues that the other two elements of the federal officer removal statute are not met, namely that Defendant does not have a colorable federal defense and that Defendant fails to establish a causal nexus between actions taken pursuant to a federal officer's directions and Plaintiff's claims.  The Court discusses each element in turn.

### A.    Colorable Federal Defense

In the NOR, Defendant contends that it has a colorable "government contractor" defense under two Supreme Court decisions; *Boyle v. United Technologies Corp.*, 487 U.S. 500, 504 (1988) and/or *Yearsley v. W.A. Ross Constr. Co.* 309 U.S. 18 (1940).  (NOR ¶¶ 12, 28).  In the Motion, Plaintiff mounts both a "facial" and "factual" attack on Defendant's ability to sufficiently allege and ultimately prove that it has a "colorable" federal defense under either case and their progenies.

As for the facial attack, Plaintiff contends that the Court need not even consider the evidence because Defendant "is not entitled to assert a federal contractor defense as a matter of law," because *Boyle* is limited to claims against defendants who "design and manufacture military equipment" and *Yearsley* is limited to the context of "property damage resulting from public works projects."  (*See* Motion at 11; Reply at 2-3, 5).  Plaintiff's factual attack is primarily based on the contention that Defendant has failed to produce sufficiently specific evidence that Defendant's conduct was the result of the Navy's "reasonably precise specifications" under *Boyle* or that the Navy "exercised significant control" over Defendant's relevant actions under *Yearsley*.  (*See* Motion at 19, 23).

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

CIVIL MINUTES—GENERAL

| | |
|---|---|
| Case No. CV 23-1267-MWF (RAOx) | Date: April 14, 2023 |
| Title: William Ollerton v. National Steel and Shipbuilding Company et al | |

### 1. Plaintiff's Facial Attack: Legal Sufficiency of Defendant's *Boyle/Yearsley* Defense

Plaintiff contends that *Boyle* does not apply here because he has not brought any product liability claim against Defendant for the manufacture or supply of any product to the Navy. The best the Court can tell Plaintiff appears to contend that his claim against Defendant arises from Defendant's negligence in failing to protect Plaintiff from asbestos dust and/or to warn Plaintiff of the dangers of such dust while he "perform[ed] repair work on the ships" Defendant serviced for the Navy. (*See* Motion at 12; Complaint ¶¶ 7, 25).

Defendant argues that it does not matter that Plaintiff's claim arises from a services rather than a procurement contract because whenever a plaintiff brings a claim for "failure-to-warn" about asbestos against a military contractor, *Boyle* applies so long as the defendant can sufficiently prove the elements of the defense. (Opposition at 2).

In *Boyle,* the Supreme Court announced a three-factor test, which if met precludes liability against a military contractor pursuant to state law as follows: (1) the United States approved "reasonably precise specifications" for the defendant to follow; (2) the defendant "conformed to those specifications;" and (3) the defendant warned the United States about the dangers regarding use of equipment that were known to the defendant but not to the United States. *Boyle*, 487 U.S. at 512. As further explained below, *Boyle* specifically involved a military contract pursuant to which the defendant supplied asbestos-containing equipment to the military. However, nothing in the opinion suggests it is so limited.

Rather, the defense announced by the Supreme Court in *Boyle* appears to properly apply to failure-to-warn and failure-to-protect claims that stem from a military contractor's repair and construction services that allegedly exposed a plaintiff to asbestos-containing products given the analysis has never been centrally concerned with what type of work the military contract calls for as much as it is concerned with the ***degree of control*** the military has over the relevant acts of the military contractor.

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

CIVIL MINUTES—GENERAL

Case No.  CV 23-1267-MWF (RAOx)                                  Date:  April 14, 2023
Title:     William Ollerton v. National Steel and Shipbuilding Company et al

Apparently, this question has not been directly addressed by the Ninth Circuit, and the parties cite two district court orders that have come to opposite conclusions. The Court briefly summarizes the holdings of both district court orders relied on by the parties.

Defendant relies on *Laukat v. ABB, Inc.*, No. CV 19-09436-CJC (Ex), 2019 WL 9088036, *1 (C.D. Cal. Dec. 13, 2019), where the same law firms raised the same arguments before a different district court and the court concluded that *Boyle* was available to NASSCO based on the plaintiffs allegations of negligence in the performance of its service contract with the Navy.  The *Laukat* court reasoned that "it would defy the principle of the defense if a defendant-contractor was protected when it produced military equipment subject to reasonably precise federal specifications, but not when the same contractor made repairs to the same equipment subject to the same degree of federal oversight and specifications." *Id.* at *5.  The court determined that no Ninth Circuit precedent supports such a "line-drawing exercise." *Id.* at *5.  The court also noted that *Boyle* derived as a "species of derivative sovereign immunity" under *Yearsley*, a case in which the Supreme Court expressly held that "government contractors may be entitled to derivative sovereign immunity when performing a contract for services," and therefore, the *Laukat* court held that *Yearsley* "fills any gaps left by the narrow test favored by [the p]laintiffs," especially given the fact that courts in the Ninth Circuit have "repeatedly rejected attempts to evade federal defenses through improper narrow waivers of liability." *Id.*

On the other hand, Plaintiff relies on *Livernois v. Fryer-Knowles, Inc.*, Case No. C 18-03735 (SBA), (N.D. Cal. Mar. 21, 2019) (Order Granting Motion to Remand) (Docket No. 417)), to support his argument.  There, the plaintiff made the same argument — that because he withdrew all of his product liability claims against the defendant there was no basis for the defendant's government defense. *Id.* at 4.  The district court agreed with the plaintiff, reasoning that the defendant failed to rebut the notion that *Boyle* is only available for product liability claims. *Id.* at 12.  The court cited several Ninth Circuit opinions for the proposition that the *Boyle* defense "is only available to contractors who design and manufacture military equipment." *Id.* at 11.

| **CIVIL MINUTES—GENERAL** | 7 |
|---|---|

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

CIVIL MINUTES—GENERAL

Case No.  CV 23-1267-MWF (RAOx)                             Date:  April 14, 2023
Title:      William Ollerton v. National Steel and Shipbuilding Company et al

(collecting cases).  Furthermore, the district court rejected the defendant's argument that it was entitled to the *Yearsley* defense as it was not properly asserted in the notice of removal, and even if considered, the district court deemed it inapplicable because the Ninth Circuit "has rarely allowed use of the defense, and only in the context of property damage resulting from public works projects."  *Id.* at 15 (citing *Gomez v. Campbell-Ewald Co.*, 768 F.3d 871, 879-80 (9th Cir. 2014), *aff'd but criticized*, 577 U.S. 153 (2016), *as revised* (Feb. 9, 2016)).

Plaintiff argues that this Court should follow the lead of the *Livernois* court because it acknowledged and followed binding Ninth Circuit precedent while the *Laukat* court ignored that precedent.  (Reply at 4).  While this Court is bound by and faithfully follows Ninth Circuit precedent, the Court disagrees with the import of the Ninth Circuit cases cited and relied on by the *Livernois* court.  Rather, a closer reading of the governing cases suggests that Defendant may raise a *Boyle*/*Yearsley* defense in this action.  Therefore, the Court agrees with the holding of *Laukat*.

***Supreme Court Cases Establishing the Government Contractor Defense***:  *Yearsley* is the seminal case in which the Supreme Court acknowledged that in certain circumstances private contractors will be protected by derivative sovereign immunity, where their actions are tightly controlled by the Federal government.  Specifically, in *Yearsley*, the Supreme Court considered whether a private contractor could be held liable for damage resulting from the private defendant's construction project, which was done pursuant to a contract with the Government and under the direction of the Secretary of War and the supervision of the Chief of Engineers of the United States.  309 U.S. at 19.  The Court held that a private contractor enjoys derivative sovereign immunity when (i) it performed acts pursuant to a valid authorization of Congress and (ii) the contractor did not exceed the scope of that authority.  *Id.* at 20-21.

Following *Yearsley*, the Supreme Court considered a wrongful death action that was brought against an independent contractor who supplied a helicopter to the U.S. military after the helicopter crashed.  In concluding that the independent contractor could raise a federal defense (and thereby preempt state tort law), the Court cited to

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

CIVIL MINUTES—GENERAL

| | |
|---|---|
| Case No. CV 23-1267-MWF (RAOx) | Date: April 14, 2023 |
| Title: William Ollerton v. National Steel and Shipbuilding Company et al | |

*and relied on Yearsley*, noting that the "Federal interest justifying [the *Yearsley* holding] surely exists ***as much in procurement contracts as in performance contracts***" and the Court noted that it saw "***no basis for a distinction***" between procurement and performance contracts. *Boyle*, 487 U.S. at 506 (emphasis added). The Supreme Court explained that the action called for displacement of state law because (1) liability of contractors performing work for the Government is an area involving "uniquely federal interests;" and (2) state laws holding government contractors liable for design defects in military equipment may present "significant conflicts" with federal policy. *Id.* 504, 511. The Court grounded the contours of the defense in the "discretionary function" exception to the Federal Tort Claims Act ("FTCA"), 28 U.S.C. § 2680(a), that protects the United States from liability for its agents performance of duties involving discretionary functions. *Id*. at 511. The Court noted that without a government contractor defense, the FTCA exemption would be undermined because courts would be permitted to "second-guess[]" discretionary decisions of government employees and the "financial burden of judgments against the contractors would ultimately be passed through . . . to the United States itself," through higher contract costs. *Id.* at 511-512. The Court thereafter articulated the three-pronged *Boyle* test, which the Court reasoned was designed to ensure that the defense only applies to actions that could frustrate the Government's "discretionary function." *Id.* at 512.

The Court reads *Boyle* as ***extending*** *Yearsley* from service to procurement government contracts. In other words, *Boyle* was an ***outgrowth*** of *Yearsley* and nothing in *Boyle* suggests an intent to ***narrow*** the protections provided by *Yearsley*. Rather, *Boyle* merely provided a more specific standard to apply where the military is exercising its discretionary function through a contract with a private party.

While Plaintiff paints this dispute as a battle of just two district court orders, the Court notes that, in fact, the issue is not so evenly divided. Indeed, several other circuit and district courts have agreed with the above reading of *Boyle*/*Yearsley* and applied *Boyle* to service contracts. *See Hudgens v. Bell Helicopters/Textron*, 328 F.3d 1329, 1333–34 (11th Cir. 2003) ("Although *Boyle* referred specifically to procurement

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

CIVIL MINUTES—GENERAL

Case No.  CV 23-1267-MWF (RAOx)                          Date:  April 14, 2023
Title:     William Ollerton v. National Steel and Shipbuilding Company et al

contracts . . . .[w]e would be exceedingly hard-pressed to conclude that the unique federal interest recognized in *Boyle*, as well as the potential for significant conflict with state law, are not likewise manifest in a case" concerning a "service contract"); *Saleh v. Titan Corp.*, 580 F.3d 1, 9 n.6 (D.C. Cir. 2009) (noting that the court agreed with the Eleventh Circuit that whether *Boyle* applies "is not contingent on whether a contract is for goods or services"); *Swift v. Tatitlek Support Servs., Inc.*, No. CV 15-01718-SVW (JPRx), 2016 WL 11604973, at *3 (C.D. Cal. Oct. 26, 2016) (observing that the "*Boyle* decision strongly suggested that the military contractor defense would extend to performance contracts" and therefore applying *Boyle* to a "service contract"); *Griffin v. JTSI, Inc.*, No. CIV. 08-00242-ACK, 2009 WL 8761211, at *12 (D. Haw. July 28, 2009) (noting that *Boyle* applied to a contract where the defendant provided "security services for a military installation"); *Means v. Arora Grp., Inc.*, No. CV 16-2755-WQH-MDD, 2017 WL 2578949, at *2 (S.D. Cal. June 14, 2017) (noting applicability of government contractor defense under *Boyle* where the defendant provided medical services to the U.S. Naval Medical Center pursuant to a personal services contract). On the other hand, this Court is unaware of any order or opinion drawing as hard of a line as the district court in *Livernois*.

   ***Ninth Circuit Precedent***:  The Court also disagrees that the Ninth Circuit precedent cited by Plaintiff and the *Livernois* court precludes such a reading of *Boyle* and *Yearsley*.  Rather, Plaintiff cites and relies on cherry-picked language from several Ninth Circuit cases, where, in discussing a distinct issue, the Ninth Circuit has stated that the government contractor defense is "only available to contractors who design and manufacture military equipment."  (*See* Motion at 7) (quoting *Snell v. Bell Helicopter Textron, Inc.*, 107 F.3d 744, 746 n.1 (9th Cir. 1997)).  Plaintiff seizes on the word "only" to suggest that it limits the *Boyle* defense to products liability claims.  However, when the quote is read in context,  it is clear that the Ninth Circuit has used the word "only" to limit the defense to **military** contracts, not to **procurement** contracts.

   Indeed, the main case that Plaintiff cites for the proposition that the Ninth Circuit has made it "unequivocally clear that non-product liability claims are not

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

CIVIL MINUTES—GENERAL

Case No.  CV 23-1267-MWF (RAOx)                              Date:  April 14, 2023
Title:     William Ollerton v. National Steel and Shipbuilding Company et al

subject to *Boyle*'s federal contractor defense," involved both product liability and negligence claims and yet the Ninth Circuit's ruling made no distinction between the various types of claims in determining if *Boyle* applied.  (*See* Reply at 3) (citing *Cabalce v. Thomas E. Blanchard & Assocs., Inc.*, 797 F.3d 720, 725 (9th Cir. 2015) (noting that the complaint alleged that the defendant was liable "under the theories of strict liability for breach of warranty, defective design . . . [and] res ispa loquitor[.]"). In *Cabacle*, the case arose from "a deadly explosion involving seized fireworks that were stored by the defendant on behalf of the federal government prior to the planned destruction of the fireworks."  *Id.* at 723.  That there was a negligence claim regarding the defendant's services was not substantively discussed, let alone dispositive.  Rather, the Ninth Circuit questioned the applicability of the defense because, as the defendant "candidly acknowledge[d]," the Ninth Circuit "has not yet applied the government contractor defense outside of **military contracts**."  *Id.* at 731, n.5 (emphasis added). But the court explained that, "[e]ven if applicable," the defense was not established because the defendant "failed to proffer any evidence that the government approved 'a particular specification' for the fireworks' destruction[.]"  *Id.* at 731-32.

      The other Ninth Circuit cases cited by Plaintiff and the *Livernois* court repeatedly confirm that the distinction the Ninth Circuit has made in determining whether *Boyle* applies turns on whether it involves a **military** contract, not whether the contract involves the provision of equipment as opposed to services.  *See, e.g., Nielsen v. George Diamond Vogel Paint Co.*, 892 F.2d 1450, 1455 (9th Cir. 1990) (the court declined to extend the government contractor defense to a situation that dealt with "a civilian worker injured in the course of a civilian job involving ***a product designed to further civilian***, ***rather than military***, objectives)" (emphasis added); *McKay v. Rockwell Int'l Corp.,* 704 F.2d 444 (9th Cir. 1983) (holding that the military contractor defense does not apply to "**an ordinary consumer product** purchased by the armed forces") (emphasis added); *In re Hawaii Fed. Asbestos Cases,* 960 F.2d 806 (9th Cir. 1992) (holding that the military contractor defense did not shield the defendants from liability as the products were not specialized items of military equipment but instead **goods sold on the ordinary commercial market**) (emphasis added); *see also Swift*,

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

CIVIL MINUTES—GENERAL

Case No. CV 23-1267-MWF (RAOx)          Date: April 14, 2023
Title:     William Ollerton v. National Steel and Shipbuilding Company et al

2016 WL 11604973, at *3 (drawing the same conclusion from a "close[] review" of these cases).

    Moreover, the Ninth Circuit has implicitly extended the defense beyond products liability in other cases. *See In re Hanford Nuclear Rsrv. Litig.*, 534 F.3d 986, 1000 (9th Cir. 2008) ("[A] contractor who agrees **to operate** a production facility pursuant to government specifications may qualify for the defense.") (emphasis added); *see also Butler v. Ingalls Shipbuilding, Inc*. 89 F.3d 582, 585 (9th Cir. 1996) (holding that the government contractor defense was applicable in an action that involved not only the design and manufacture of an accommodation ladder on a military submarine but the defendant's "**testing and installation**" of the ladder, all of which was done under the Navy's "control") (emphasis added).

    Finally, with respect to the bounds of *Yearsley*, the Court notes that the *Livernois* court relied on the Ninth Circuit's opinion in *Gomez* for the proposition that *Yearsley* established a "narrow rule regarding claims arising out of property damage caused by public works projects." *Livernois*, Case No. C 18-03735 (SBA), Order Granting Motion to Remand (Docket No. 417), at 15. However, the Supreme Court granted certiorari in *Gomez*, and although the Ninth Circuit's holding was affirmed, the Court specifically rejected the Ninth Circuit's characterization of *Yearsley*. The Court noted that it "disagree[d] with the Court of Appeals to the extent that it described *Yearsley* as 'establish[ing] a narrow rule regarding claims arising out of property damage caused by public works projects.'" *Campbell-Ewald Co. v. Gomez*, 577 U.S. 153, 167 n.7 (Feb. 9, 2016) (citing 768 F.3d at 879). Instead, the Supreme Court reemphasized that "[c]ritical in *Yearsle*y was not the involvement of public works but the contractor's performance **in compliance with all federal directions**." *Id.* (emphasis added). And the Ninth Circuit's refusal to apply *Yearsley* in *Cabalce* turned on the fact that the defendant did not provide evidence that it "had no discretion" in performance of the contract, further confirming that the Government's control over the work, not the type of work, is the critical requirement for *Yearsley* to apply. *See Cabalce,* 797 F.3d at 732.

---

**CIVIL MINUTES—GENERAL**                                    12

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

CIVIL MINUTES—GENERAL

Case No.  CV 23-1267-MWF (RAOx)                              Date:  April 14, 2023
Title:      William Ollerton v. National Steel and Shipbuilding Company et al

      Therefore, the Court agrees with the *Laukat* court's assessment that *Yearsley* "fills any gaps" not covered by *Boyle* itself.  In other words, *Yearsley* makes clear that the government contractor defense can apply to the performance of service contracts, while *Boyle* provides the specific test to be applied in the military contractor context.  *See Laukat*, 2019 WL 9088036 at *5; *see also Griffin*, 2009 WL 8761211, at *12 (noting that *Boyle* relied on *Yearsley*, which involved a service contract, so there is no reason to conclude that *Boyle* does not apply to military service contracts).  Such a reading comports with the ultimate purposes of the defense – namely, to insulate military discretion and to avoid passing the costs of liability to the military through higher contract costs.  *See Swift*, 2016 WL 11604973, at *3 ("Without the defense, the government's own tort immunity for its discretionary functions would be undermined.  Contractors held liable for design features that were the subject of discretionary approval by the government would predictably pass on the costs of liability, ultimately imposing costs on the government that its immunity was intended to preclude.") (citing *Boyle*, 487 U.S. at 511).

      Accordingly, the Court rejects Plaintiff's facial jurisdictional attack.  If the elements are met, the military contractor defense is available based on a services contract under *Boyle* and *Yearsley*.  As such, the Court next determines whether, as a factual matter, Defendant has adduced sufficient evidence to satisfy the requirements of the defense under *Boyle*.

### 2. Plaintiff's Factual Attack: Sufficiency of Defendant's Evidence in Support of the *Boyle* Defense

      The Court notes that two briefing issues complicate the factual analysis for the Court.  First, because the Complaint is exceedingly vague as to the claim(s) against Defendant, Defendant understandably did not entirely grasp that the only claim against it arose from its services in performing ship repairs for the Navy (rather Defendant seemed to believe certain of the claims involved its provision of equipment to the Navy).  Therefore, Plaintiff's Motion attacks some of the evidence offered in the NOR as irrelevant.  However, Defendant responds in the Opposition with more targeted

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

CIVIL MINUTES—GENERAL

| | |
|---|---|
| Case No.  CV 23-1267-MWF (RAOx) | Date:  April 14, 2023 |
| Title:     William Ollerton v. National Steel and Shipbuilding Company et al | |

evidence, which the Court views as a fair response given Plaintiff's claims are something of a moving target.  The Court therefore considers the new evidence in the Opposition and notes that Plaintiff has largely failed to respond to the Opposition evidence in the Reply.

The second issue is that Plaintiff often conflates and confuses the elements of the *Boyle* defense with the elements of the officer removal statute.  To reiterate, the officer removal statute is the umbrella rule within which the *Boyle* defense arises.  To employ the officer removal statute the defendant must demonstrate both that it has a "colorable federal defense" and that there is a "causal nexus" between acts performed under the direction of a federal officer and the plaintiff's claims.  As noted, Defendant relies on *Boyle* to establish that the "colorable defense" element.

The *Boyle* defense itself has three elements as follows: (1) the military required reasonably precise specifications of the work done by the defendant; (2) the defendant's work conformed to those specifications; and (3) the defendant warned the military of dangers unknown to the military.  The Motion conflates the "reasonably precise specifications" element of *Boyle* with the "casual nexus/under officer direction" requirement of the officer removal statute, making the arguments hard to decipher.  Here, the Court addresses whether Defendant has adduced sufficient evidence to establish a "colorable defense" by assessing the three elements of the *Boyle* defense, before next addressing the casual nexus/officer direction element of the removal statute.

In support of its NOR and Opposition, Defendant collectively filed four substantive declarations and several supporting exhibits.  The testimony is from two former Rear Admirals of the U.S. Navy (Admirals Roger B. Horne Jr. and John B. Padgett III), a former Lieutenant of the U.S. Naval Reserve and current CEO of a firm specializing in research and analysis of U.S. Navy maintenance, repair, and construction (Christopher P. Herfel), and a former Program Manager at NASSCO (who also formerly served as a Lieutenant Junior of the U.S. Navy) (Stephen B. Severs).

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

CIVIL MINUTES—GENERAL

Case No.  CV 23-1267-MWF (RAOx)                           Date:  April 14, 2023
Title:     William Ollerton v. National Steel and Shipbuilding Company et al

    Plaintiff's main factual arguments as to why the first element of *Boyle* has not been satisfied based on the above evidence appears to be as follows: (a) the declarations submitted by Defendant are "riddled with" "coulda, woulda, shoulda" language and as such are "hypotheticals" that have "insufficient evidentiary weight to support a conclusion that those actions actually did happen;" (b) that the declarations lack specificity regarding any specifications that Defendant was required to follow in performing repair work; and (c) that Defendant never provided the actual contract for its work done on the USS *Duluth*.  (Reply at 6).

    Plaintiff's "coulda, shoulda, woulda," argument seems to misapprehend the nature of the testimony offered and raises the same arguments rejected by the Ninth Circuit in *Leite*.  *See* 749. F.3d at 1123 (noting that the declarations of two Rear Admirals regarding required Navy specifications at the time of the action were "supported by an adequate foundation based on the affiants' knowledge of Navy [] policies").  The declarations of Admirals Horne and Padgett and of Lieutenant Herfel are offered as expert testimony and their declarations more than establish their qualifications to opine on the Navy specifications for the work at issue in this action. Experts often lack personal knowledge of the specific facts of the action but are routinely entitled to opine on matters within their expertise after a review of the case-specific information.

    The expert declarations demonstrate that each declarant reviewed documents and information regarding the specific ship Plaintiff worked on (i.e., USS Duluth) and their opinions explain that the work done on that ship would have been done in conformance with specific procedures and protocols based on their expert knowledge of the Navy, its contracts for Navy ship repairs, and the asbestos protocols in place at the relevant time.  Moreover, Defendant offers the declaration of Lieutenant Severs, who was employed by Defendant at the time Plaintiff worked on USS *Duluth*, and his position specifically involved overseeing and managing Navy ship repairs.  (Declaration of Stephen B. Severs ("Severs Decl.") ¶ 5).  Although Lieutenant Severs did not seem to work specifically on the USS *Duluth,* he testifies that during his NASSCO employment, "he became familiar with the contract terms, work packages, conditions,

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

CIVIL MINUTES—GENERAL

| | |
|---|---|
| Case No.  CV 23-1267-MWF (RAOx) | Date:  April 14, 2023 |
| Title:      William Ollerton v. National Steel and Shipbuilding Company et al | |

requirements, and specifications for" overhauls and maintenance for "various classes of Navy ships" and he has "no reason to doubt that the repairs performed aboard the USS *Duluth* in the mid-1970s were in any way different from the Navy's contract protocols and procedures that [he] experienced at NASSCO beginning in 1978." (*Id.* ¶ 11). Plaintiff offers no reasoned explanation as to why these declarations are insufficient to support the military contractor defense as relevant expert, and at least circumstantial, evidence. Given the events giving rise to this action occurred over forty years ago, to require more would place a potentially insurmountable burden on Defendant at the removal stage.

As to the specificity of the specifications imposed by the Navy, the Court also deems the evidence sufficient. Lieutenant Herfel specifically identifies the Navy's asbestos handling protocols for the handling of asbestos containing materials during the relevant times, including the following specifications: NAVSHIPS Notice 9390 (1971) (Ex. 9) (detailing safety and control procedures for asbestos installation and rip out); Chapter 9390 of the Naval Ship Systems Command Technical Manual (1972) (Ex. 10) (imposing new requirements for asbestos insulation); Chapter 9390 of the Naval Ships Technical Manual revised and redesignated as Chapter 635 (1976) (Ex. 4) (describing more detailed asbestos safety requirements); and NAVSEA Standard Item 009-10 (1977) (Exhibit 7) (outlining asbestos-related safe handling practices that marine contractors were required to comply with). (Declaration of Christopher P. Herfel ("Herfel Decl.) ¶¶ 24-30)

Lieutenant Severs also opines that the handling of asbestos on the USS *Duluth* was covered by NAVSEA Standard Item 009-10, which "set forth contractually required protocols as to how the materials were to be identified, tested, isolated, removed and disposed of." (Severs Decl. ¶ 12). Lieutenant Severs further explains that NAVSEA Standard Item 009-10 "specifically dictated the types of personal protective equipment to be utilized for asbestos handling, as well as the types of warning language to be used and the posting of such warnings." (*Id.*)

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

CIVIL MINUTES—GENERAL

Case No.  CV 23-1267-MWF (RAOx)                              Date:  April 14, 2023
Title:     William Ollerton v. National Steel and Shipbuilding Company et al

  Additionally, Admiral Padgett testifies that all construction, overhaul, repair, modernization, and maintenance work performed by Defendant was performed in accordance with "Navy Military Specifications and under the direct supervision of Navy personnel." (Declaration of John B. Padgett ("Padgett Decl.") ¶ 10).  Admiral Padgett further testifies that the Navy was in full control of and dictated the type of work to be done and the equipment or materials to be removed, replaced, or installed for all their vessels, and that the Navy "retained ultimate decision-making authority." (*Id.* ¶ 16).  He explains that "any deviation from Military Specifications would have required specific and express written approval from the Navy." (*Id.* ¶ 18).  Further, according to Admiral Padgett, the Navy directed, controlled, and approved any warnings relating to the health and safety of its service people.  (*Id.* ¶¶ 24, 27).  Admiral Padgett further explains that the Navy issued protocols to "mitigate worker exposure to asbestos dust, such as requiring respiratory equipment and enforcing strict procedures in areas where asbestos was being removed, as well as the phased replacement of asbestos containing products with Navy approved substitutes." (*Id.* ¶ 47).

  And although there is no specific contract in the record, one of the declarants clearly describes the relevant contract between Defendant and the Navy.  Lieutenant Herfel opines that "[t]o bid on and be awarded a U.S. Navy repair contract, the shipyard was required by the U.S. Navy to have a 'Master Ship Repair Contract,'" as defined in the U.S. Navy Ship Repair Contracting Manual." (*Id.* ¶ 22).  The Master Ship Repair Contract imposed a duty to comply with U.S. Navy safety and health standards, rules, policies, and procedures when a U.S. Navy ship was undergoing overhaul and repairs.  (*Id.*).  While Defendant may need to produce the actual contract at trial under the best evidence rule, the Court is focused on the content, not the form, of the evidence at this stage.  Therefore, this testimony is sufficient to identify the relevant contract.

  The evidence Defendant has adduced parallels (if not surpasses) what the Ninth Circuit found sufficient in *Leite*, and Plaintiff has made no persuasive argument to the contrary.  *See Leite*, 749 F.3d at 1123 (noting that the evidence showed the Navy was

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

CIVIL MINUTES—GENERAL

Case No.  CV 23-1267-MWF (RAOx)                          Date:  April 14, 2023
Title:     William Ollerton v. National Steel and Shipbuilding Company et al

"directly involved in preparing" safety manuals for the handling of asbestos and that contractors could not include warnings beyond those specifically required and approved by the Navy, which was sufficient to show the Navy "exercised its discretion and approved certain warnings" to meet *Boyle's* first element); *see also Getz v. Boeing Co.*, 654 F.3d 852, 866 (9th Cir. 2011) (holding that the government contractor defense is not limited to "instances where the government forbids additional warning or dictates the precise contents of a warning").  Therefore, the Court concludes that the first element of *Boyle* is satisfied.

In the briefing, Plaintiff does not appear to directly challenge Defendant's evidentiary showing as to the second and third elements of *Boyle*, but even so, the Court concludes that Defendant has met its burden.  Conformity with the specifications, the second element of the *Boyle* test, is established by Lieutenant Severs testimony that "[n]on-conforming work was not accepted by the Navy" and that "[s]trict compliance with all work specifications, including those standards and regulations related to the display of hazard information, was mandatory." (Severs Decl., ¶ 22).  Lieutenant Severs further explains that compliance was enforced, and that the U.S. Navy had "a very significant presence at NASSCO during the overhaul and repair of vessels, including "[n]aval personnel performing work aboard the vessel during overhaul and repairs, Navy personnel performing supervisory functions in connection with work being performed by [the] Ship's Force, NASSCO and NASSCO subcontractors, and oversight personnel." (*Id.* ¶ 16(g)).  He further testifies that a Navy Port Engineer was assigned to coordinate the work and stay "continuously engaged" with the repair process.  (*Id.* ¶ 16 (c)).  And the third *Boyle* element, that the Navy was aware of the dangers, is established by the declaration of Admiral Horne who testifies that, starting in the 1960's, the Navy was aware of a connection between asbestos and cancer.  (Horne Decl. ¶ 16); *see Leite*, 749 F.3d at 1124 (concluding that the defendant adduced sufficient evidence of the second and third *Boyle* elements through declarations showing that the defendant's equipment would have been rejected if it failed to comply with Navy regulations and that the Navy at all times knew at least as much about asbestos hazards as the defendant).

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

CIVIL MINUTES—GENERAL

| | |
|---|---|
| Case No. CV 23-1267-MWF (RAOx) | Date:  April 14, 2023 |
| Title: William Ollerton v. National Steel and Shipbuilding Company et al | |

At the hearing, Plaintiff's counsel argued that the declarations themselves indicate that Defendant was required to follow state law and regulations in terms of asbestos warnings, and therefore there is no conflict between state and federal law, as required for the contractor defense to apply.  Plaintiff framed this argument as going to the causal nexus element of the officer removal statute, but the Court views it more as an argument that *Boyle's* second factor is not met (i.e., that Defendant failed to conform to the very specifications mandated by the U.S. Navy).  However, under *Leite*, the testimony that Defendant's work would not have been accepted absent compliance with Navy specifications; that any deviations from Navy specifications would have required written approval; and that the U.S. Navy had an ongoing and continuous presence aboard the ship to oversee all operations, is sufficient to make an adequate showing for *Boyle's* second element at the removal stage.

The Court reiterates that, at this stage, Defendant "doesn't have to prove that its government contractor defense is in fact meritorious."  *Leite*, 749 F.3d at 1124.  It may be the case that Defendant cannot ultimately prove that it did conform to the Navy specifications requiring asbestos warnings.  But the Court cannot conclude as a matter of law based on the current record that there is no conflict between state and federal law regarding the warnings.  If it turns out that Defendant did conform to Navy specifications, and Plaintiff claims that state law required something different, the laws would inevitably conflict.  That is precisely what the *Boyle* elements are aimed at testing (i.e., whether imposing state law on government contractors conflicts with, and undermines, the government's immunity when exercising its discretionary functions under the FTCA).  But what is required to avoid remand is that Defendant prove by a preponderance of the evidence "that its government contractor defense is 'colorable.'"  *See id.* (internal citation omitted).  Defendant has met that burden.

> **B.      Causal Nexus Between Actions Taken Pursuant to Federal Officer's Directions and Plaintiff's Claims**

Based on the same evidence, Defendant has also proved by a preponderance of the evidence that a causal nexus exists between Plaintiff's claim against Defendant and

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

CIVIL MINUTES—GENERAL

Case No. CV 23-1267-MWF (RAOx)　　　　　　　　　Date: April 14, 2023
Title:　　William Ollerton v. National Steel and Shipbuilding Company et al

the actions Defendant took at the direction of federal officers. *See Leite*, 749 F.3d at 1124 (noting that the same evidence supporting a *Boyle* defense will establish the "causal nexus" and "officer direction" aspect of the officer removal statute).

　　Plaintiff's argument is that Defendant has not shown any actions taken specifically "at the direction of an officer." (Motion at 15, 18). This argument is belied by Plaintiff's own allegation in the Complaint (which appears designed to avoid dismissal under the workers' compensation statute) that his exposure to "asbestos by virtue of [D]efendant's failure to protect from asbestos, did not arise out of the plaintiff's employment, as the defendant lacked the right to control the manner or means of the plaintiff's work duties." (Complaint ¶ 5). This allegation alone appears dispositive. *See Goncalves By & Through Goncalves v. Rady Children's Hosp. San Diego*, 865 F.3d 1237, 1244 (9th Cir. 2017) (noting that the "hurdle erected by [the causal-connection] requirement is quite low" and that the "defendant needs to show only that the challenged acts occurred because of what they were asked to do by the Government).

　　As noted, the nature of Plaintiff's claim against Defendant is quite vague but appears to consist of a failure to protect workers from, and warn workers of, the risks of asbestos dust. As detailed above, the declarations establish that the Navy exerted and directed detailed control over the inspection, installation, and repair of Navy vessels such as the USS *Duluth* including the protocols to protect and warn workers about asbestos. Therefore, the Court concludes that Defendant has established a causal nexus between Plaintiff's claims and the acts performed by Defendant under the direction of the Navy.

　　Accordingly, because all three elements of the officer removal statute are satisfied, Defendant has satisfied its burden to establish subject matter jurisdiction. The Motion is therefore **DENIED**.

　　IT IS SO ORDERED.